USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/22/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FREDERICK S. SHEHADI, JR.,　　　　　　　　　　：

　　　　　Plaintiff/Counterclaim Defendant,　：

　　　　　-against-　　　　　　　　　　　　　：

DAVID A. LIFSON, AS ADMINSITRATOR OF　　　：
THE ESTATE OF WILHELM ALBRECHT
NEUMANN, DECEASED,　　　　　　　　　　　：

　　　　　Defendant/Counterclaim Plaintiff,　：

　　　　　-against-　　　　　　　　　　　　　：

FREDERICK S. SHEHADI, III,　　　　　　　　：

　　　　　Counterclaim Defendant.　　　　　：
------------------------------------------------------------------x

10 Civ. 4571 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Frederick S. Shehadi, Jr., and his son, Frederick S. Shehadi, III, entered into a contract to purchase a cooperative apartment from the Estate of Wilhelm Albrecht Neumann. The board of the cooperative housing association failed to approve the sale, and it fell through. This action concerns whether the Estate may keep or must refund the $107,500 deposit the Shehadis made upon entering the contract. Because the Shehadis falsely warranted, when entering into the contract, that they were not subject to any unpaid tax liens or money judgments, the Court concludes that the Estate is entitled to retain the deposit as liquidated damages as provided for in the contract. For that reason the Estate's motion for summary judgment on its counterclaim is granted and Frederick S. Shehadi Jr.'s complaint seeking return of the deposit is dismissed.

## I. BACKGROUND

The following facts are not in dispute.

A. <u>The Contract of Sale and Deposit</u>

On December 15, 2009, Frederick S. Shehadi, Jr., ("Shehadi") and Frederick S. Shehadi, III, ("Shehadi III") entered into a contract with David A. Lifson as administrator of the Estate of Wilhelm Albrecht Neumann ("Estate") to purchase a co-op unit in 126 West 11th Street in Manhattan for $1,075,000. (Countercl. Pl.'s Local Rule 56.1 Statement of Undisputed Facts, Dkt. No. 19 ("Pl.'s 56.1") at ¶¶ 1, 2; Countercl. Defs.' Response to Countercl. Pl.'s Local Rule 56.1 Statement of Undisputed Facts, Dkt. No. 25 ("Defs.' 56.1") at ¶¶ 1, 2.) The contract required the Shehadis to make a deposit of $107,500—ten percent of the sale price—upon signing, which they did. (Ex. 1 to Answer ("Contract of Sale") at ¶¶ 1.16.1, 2.2.1.) The sale was subject to the approval of the co-op board of directors, and the contract provided for the return of the Shehadis' deposit if the board withheld consent. (*Id.* at ¶¶ 6.1, 6.3.)

On November 7, 2009—more than five weeks prior to entering the contract of sale—the Shehadis submitted financial statements to the Estate's real estate broker. (Pl.'s 56.1 at ¶ 55; Defs.' 56.1 at ¶ 55.) Shehadi III indicated in his statement that he had unsatisfied judgments for taxes and that these were "[t]o be paid before board package submitted." (Ex. 1 to Decl. of Frederick S. Shehadi, III, dated Oct. 16, 2010.)

In the December 15, 2009 contract of sale, however, the Shehadis, as the "Purchaser" of the unit, made the following representation: "Purchaser represents and covenants that: . . . there are not now and shall not be at Closing any unpaid tax liens or monetary judgments against Purchaser." (Contract of Sale at ¶¶ 4.2, 4.2.6; *see id.* at ¶ 1.1.2.) They further represented: "Purchaser, to the best of its actual knowledge, represents to Seller that Purchaser has had no material credit problems within the past five (5) years which would reasonably be expected to adversely affect Purchaser's application for [co-op] Board approval." (*Id.* at ¶ 35.) In the event

of Purchaser's misrepresentation, the contract provided that "Seller's sole and exclusive remedies shall be to cancel this contract [and] retain the Contract Deposit as liquidated damages . . . ." (*Id.* at ¶ 13.1.)

### B. The Shehadis' Failed Application for Co-op Board Approval

The co-op board denied the Shehadis' initial application for approval on February 10, 2010. (Answer ¶ 52; Answer to Countercl. ¶ 44.) Upon the Shehadis' request for reconsideration, the co-op board requested information on Shehadi III's financial history, including, *inter alia*, an explanation of two court proceedings against him for nonpayment of rent, an explanation of an American Express chargeoff that appeared on his credit report, a full employment history and/or a financial statement from a certified public accountant, and an explanation of federal tax judgments entered against him. (Ex. 2 to Answer.)

In a February 22 letter to the board, Shehadi III provided a full employment history and a letter from a certified public accountant. (*See* Ex. 3 to Answer.) He claimed ignorance of the court proceedings concerning unpaid rent and stated that he had always paid his rent on time. (*Id.*) The American Express chargeoff, he explained, was a result of "reduced income and not negligence." (*Id.*) As to the federal tax judgments, Shehadi III wrote:

> Regarding the Federal Tax judgments, these have been paid in full, I have provided a letter from my attorney stating the reason for the judgments and a copy of the cleared check the government has cashed. I would like to state that these judgments existed as a result of cash flow and not negligence on my part. As with many people in America, the recent economic collapse left me with a reduced income, resulting in my needing extra time to satisfy these taxes. As soon as funds were made available to me I satisfied these judgments.

(*Id.*) The lawyer's letter, dated February 23, 2010, explained that Shehadi III had "recently paid down a certain indebtedness to the Internal Revenue Service" and echoed Shehadi III's reduced cash flow explanation for the failure to pay the debt earlier. (Ex. 4 to Answer.) The January 5,

3

2010 check to the U.S. Treasury satisfying the tax liability—drawn on the account of "Crystal Clear Music Inc c/o Fred Shehadi"— was for $12,544.03 and bore the notation "Tax years 2003 2006." (Ex. 4 to Decl. of Richard L. Herzfeld dated Sept. 27, 2010 ("Herzfeld Decl.").[1])

The co-op board rejected the Shehadis' request for reconsideration on March 4, 2010, (Answer ¶ 65; Answer to Countercl. ¶ 57), and the Estate notified the Shehadis that it was cancelling the contract of sale, (Pl.'s 56.1 at ¶ 74; Defs.' 56.1 at ¶ 74). The Estate subsequently sold the unit for $1.2 million, $125,000 more than the Shehadis had agreed to pay. (*See* Ex. 1 to Decl. of Steven Finell dated Oct. 18, 2010.)

C. This Action

Invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332, Shehadi sued the Estate to recover the contract deposit. The Estate brought a counterclaim for breach of contract against Shehadi and Shehadi III. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the Estate's compulsory counterclaim. *See World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 163 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006). The Estate's escrowee deposited the $107,500 down payment at issue with the Court's Clerk of Court pursuant to Federal Rule of Civil Procedure 67.

The Estate now moves for summary judgment on its counterclaim, arguing that the Shehadis breached the contract of sale in three ways: First, by falsely representing that, at the

---

[1] This exhibit is not the check itself, but a printout from an online banking system bearing the image of the front of the check. The Shehadis object to consideration of this exhibit "on the ground that no evidentiary foundation is laid." (Defs.' 56.1 at ¶ 23.) The Court finds sufficient foundation to rebut the Shehadis' cursory objection. The February 2010 letters from Shehadi III and his lawyer to the co-op board establish that Shehadi III's tax judgments had recently been paid by check. All indications are that the January 2010 check to the U.S. Treasury—the image of which is reproduced in the challenged exhibit—is the recent payment to which Shehadi III and his lawyer refer. Indeed, it appears that this exhibit was the copy of the cleared check Shehadi III provided the co-op board with his letter, (Herzfeld Decl. at ¶ 5). *See also United States v. Naranjo*, 634 F.3d 1198, 1213 (11th Cir. 2011).

4

time of entering the contract, they were not subject to any unpaid tax liens or monetary judgments. Second, by falsely representing that they were unaware of material credit issues likely to harm their chances for co-op board approval. And third, by failing to submit a timely application for co-op board approval. The Court finds that the Estate has established entitlement to summary judgment on the first ground asserted.

## II. DISCUSSION

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).

What facts are material, of course, turns on the nature of the Estate's claims, an issue in dispute. The Estate contends that the Shehadis' alleged misrepresentations give rise to a cause of action for breach of contract, specifically breach of warranty. The Shehadis' position is that these representations cannot be warranties because they are not specifically styled as such. The Court agrees with the Estate.

The Shehadis offer no authority to support their position that the term "warranty" is necessary to create a warranty.[2] They are not correct: a warranty need not be labeled as such. *See Heath Dry Gas Co. v. Hurd*, 193 N.Y. 255, 258 (1908); *Northland Nav. Co. v. Am. Merchant Marine Ins. Co. of New York*, 214 A.D. 571, 577 (1st Dep't 1925); *see also Corpus Juris Secondum, Contracts* § 453. As Judge Learned Hand wrote, a warranty is

---

[2] The Shehadis' memorandum in opposition to summary judgment is remarkable for its utter lack of citation to any legal authority in support of any of its pertinent arguments. Counsel for the Shehadis is directed to Local Civil Rule 7.1(a)(2), which requires memoranda of law to "set[] forth the cases and other authorities relied upon."

5

> an assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.

*Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946); *see CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 503 (1990).

The representations at issue here are assurances of fact by the Shehadis. They are written on the face of the contract of sale. And that contract specifically provides for a monetary remedy in the event of the buyer's misrepresentation. These representations qualify as warranties.

To prevail on a breach of warranty claim, the Estate must demonstrate that the warranty was "relied on as part of the contract" and that it was breached. *CBS Inc.*, 75 N.Y.2d at 503-04. Reliance in this context does not mean that the Estate relied on the truth of the warranted fact. *Id.* at 503. Rather, the Estate could have harbored doubts as to the truth of the warranted information yet will still have relied on it if the Estate "'believed it was purchasing the [Shehadis'] promise as to its truth.'" *Id.* (brackets omitted) (quoting *Ainger v. Michigan Gen. Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979)). The buyer of a warranty, however, waives a breach of warranty if the "buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract" and fails to expressly reserve the right to enforce the warranty. *Galli v. Metz*, 973 F.2d 145, 151 (2d Cir. 1992).

A. <u>The warranty was breached</u>

The Shehadis do not dispute that they breached their warranty that there were no unpaid judgments against them at the time of the contract of sale. In correspondence with the co-op board, Shehadi III admitted to the existence of federal tax judgments. (Ex. 3 to Answer.)

Shehadi III did not pay these judgments until January 5, 2010, (Ex. 4 to Herzfeld Decl.), three weeks after warranting in the contract of sale that he was not subject to any outstanding unpaid judgments. In light of these facts, the Shehadis' contractual representation that no unpaid judgments existed was false.

B.  The Estate did not waive the Shehadis' breach of the warranty

Reliance is established if "the express warranties are bargained-for terms of the seller." *CBS, Inc.*, 75 N.Y.2d at 506 n.5. The Estate has made the requisite showing of reliance: Because the representation and covenant concerning the absence of unpaid judgments is included in the contract of sale, no rational juror could find that it was not a term of the bargain the Estate struck. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 360 (2d Cir. 1992), *abrogated on other grounds by Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

The Shehadis, however, maintain that the Estate waived the breach, which would have occurred in this case if the Estate closed on the contract "in the full knowledge and acceptance of facts disclosed by the [Shehadis] which would constitute a breach of warranty under the terms of the contract." *Galli*, 973 F.2d at 151. The relevant question, then, is whether the Shehadis have raised a triable issue as to whether they disclosed to the Estate the fact that they were in breach of the representation in the December 15, 2009 contract of sale that there are "not now and shall not be at Closing any unpaid tax liens or monetary judgments" against them. (Contract of Sale at ¶ 4.2.6.) They have not.

There is no evidence that the Shehadis told the Estate that they had unsatisfied money judgments on December 15, 2009, the date of the contract. At most, the evidence shows that the Shehadis on November 7, 2009—more than five weeks before the contract was entered into— informed the Estate of Shehadi III's unpaid tax judgments and of the Shehadis' intent to satisfy

7

these judgments prior to applying for co-op board approval. That notice, of course, did not inform the Estate that the Shehadis had not satisfied the judgments prior to entering into the contract on December 15. There is no evidence that the Shehadis told the Estate that, despite their representation to the contrary in the contract, the tax judgments remained unpaid. Because the Estate was not aware of that fact, it did not waive the Shehadis' breach.

C. The Estate need not prove actual damages

The contract of sale provides that "[i]n the event of default or misrepresentation by Purchaser, Seller's sole and exclusive remedies shall be to cancel this contract [and] retain the Contract Deposit as liquidated damages . . . ." (Contract of Sale at ¶ 13.1.) The Shehadis argue that the Estate cannot enforce this liquidated damages clause in the absence of a showing that they sustained some actual damage, a showing the Estate supposedly cannot make because it subsequently sold the co-op unit for more than the Shehadis would have paid. The Shehadis' position is not the law.

In *Maxton Builders, Inc. v. Lo Galbo*, 68 N.Y.2d 373, 379-82 (1986), the New York Court of appeals reaffirmed its century-old rule that a seller of real estate, in the event of the purchaser's breach of contract, is entitled to retain a contract deposit that does not exceed ten percent of the purchase price. A seller need not prove actual damages to retain the deposit, *see id.* at 381-82, *see, e.g.*, *Barton v. Lerman*, 233 A.D.2d 555, 556 (3d Dep't 1996), and is entitled to retain the deposit "even in instances where the premises are sold for a sum equal to or greater than the [original] contract price," *Johnson v. Werner*, 63 A.D.2d 422, 424 (1st Dep't 1978); *see Micciche v. Homes by Timbers, Inc.*, 18 A.D.3d 833, 834 (2d Dep't 2005). This is true even with contracts of sale for co-op units containing liquidated damages provisions, which are not

8

technically sales of real estate.³ *See, e.g., Capati v. Dolorico*, No. 570166/03, 2004 WL 1869946, at *1 (1st Dep't Aug. 4, 2004); *Blackman v. Genova*, 268 A.D.2d 547, 548 (2d Dep't 2000); *Colacino v. Andrews*, No. 117685/09, 2011 WL 2937281, at *10 (N.Y. Sup. Ct. July 21, 2011); *Jin Young Park v. Zbarsky*, No. 116761/08, 2009 WL 1620018, at *3 (N.Y. Sup. Ct. May 21, 2009).

Simply put, the Estate is entitled to retain the down payment.

### III. CONCLUSION

The Shehadis warranted in the contract of sale that they were not subject to unpaid judgments at the time of making the contract. The indisputable facts demonstrate that that was false and that the Shehadis did not disclose such falsity to the Estate. The contract of sale provides that the Estate can retain the contract deposit as liquidated damages in the event of such misrepresentation, a result New York law specifically authorizes. In light of the foregoing, the Court concludes that the Estate is entitled to retain the $107,500 deposit. The Court accordingly grants the Estate's motion for summary judgment. Shehadi's complaint, which seeks recovery of the deposit, is dismissed.

Dated: New York, New York
       September 22, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

---

³ The liquidated damages in this contract actually provided that "[t]he principles of real property law shall apply to this liquidated damages provision." (Contract of Sale at ¶ 13.1.)

9